```
                    UNITED STATES DISTRICT COURT

                    MIDDLE DISTRICT OF LOUISIANA


JOHN WLECZYK
                                          CIVIL ACTION
VERSUS
                                          NUMBER 09-188-RET-SCR
MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION
```

**<u>NOTICE</u>**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, July 23, 2010.

```
                              STEPHEN C. RIEDLINGER
                              UNITED STATES MAGISTRATE JUDGE
```

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOHN WLECZYK

VERSUS

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

CIVIL ACTION

NUMBER 09-188-RET-SCR

**MAGISTRATE JUDGE'S REPORT**

Plaintiff John Wleczyk brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision that awarded him a closed period of disability and denied his claim for continued disability benefits. Before the court is the plaintiff's petition for judicial review and appeal of the final administrative decision of the Commissioner of Social Security, Michael J. Astrue (Commissioner).

**Standard of Review**

Under § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings; and, (2) whether the Commissioner's final decision applies the relevant legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001). If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S.

389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131 at 135. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v.* Bowen, 809 F.2d 1054, 1057 (5th Cir. 1981); Western *v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

In the typical disability case an application for benefits is decided while a claimant is under a continuing disability. If the

application is granted, disability payments continue in accord with that decision, and a termination of benefits requires a subsequent hearing in which the Commissioner reviews and decides whether to terminate the benefits being paid.  In contrast, in a closed period case, the agency determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision.  Nevertheless, in closed period cases the ALJ engages in the same decision-making process as in a termination case.  *Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002).   Based on the Fifth Circuit's holding in *Waters* the medical improvement standard must be applied to determine the cessation date in close period cases.  *Id*.

Disability benefits may cease if there is substantial evidence demonstrating that (1) there has been a medical improvement related to the ability to work, and (2) the individual is now able to engage in substantial gainful activity.  *Id.; Teague v. Astrue*, 342 Fed.Appx. 962 (5th Cir. 2009).

The regulations define medical improvement as any decrease in the medical severity of the individual's impairment which was present at the time of the most recent favorable decision that the individual was disabled or continued to be disabled.  A determination that there has been a decrease in medical severity must be based on improvements in the symptoms, signs or laboratory findings associated with the individual's impairments.  20 C.F.R.

§ 404.1594(b)(1). The evaluation process for terminating disability benefits also requires that medical improvement be related to an individual's ability to work. A medical improvement is only related to an individual's ability to work if there has been a decrease in the severity of the impairment(s) present at the time of the most recent favorable medical decision, and an increase in the individual's functional capacity to do basic work activities. 20 C.F.R. § 404.1594(b)(3).[1]

If it is determined that there has been medical improvement related to an individual's ability to work, the statute and the regulations then require the Commissioner to show that the individual is currently able to engage in substantial gainful activity. 42 U.S.C. § 423(f)(1)(B); 20 C.F.R. § 404.1594(a) and (b)(5). In evaluating the ability to engage in substantial gainful activity all of the individual's current impairments are considered, not just the impairments present at the time of the last favorable decision. 20 C.F.R. § 404.1594(b)(5). This part of the evaluation process incorporates many of the standards set forth in the regulations governing initial disability determinations. 20

---

[1] Conversely, medical improvement is not related to ability to work if there has been a decrease in the severity of the impairments present at the time of the most recent favorable medical decision, but no increase in the individual's functional capacity to do basic work activities. 20 C.F.R. § 404.1594(b)(2).

C.F.R. § 404.1594(f)(6)-(8).[2]  However, the difference is that the burden of proof lies with the Commissioner to show that the claimant is no longer disabled as of the cessation date.  *Waters, supra; Griego v. Sullivan*, 940 F.2d 942, 943 (5th Cir. 1991).

## **Background**

Plaintiff John Wleczyk was 45 years of age at the time of the administrative hearing and decision.  AR pp. 31-32.[3]  Plaintiff obtained his high school degree, and his most recent relevant work

---

[2]  (1) Is the claimant engaged in substantial gainful activity? (If so, the disability has ended.); (2) If not, does the claimant have an impairment or combination of impairments which meets or equals the severity of an impairment listed in Appendix I? (If so, the disability is continuing.); (3) If not, has there been medical improvement?; (4) If there has been medical improvement, is it related to the claimant's ability to do work?; (5) If there has been no medical improvement, or if the medical improvement is not related to the claimant's ability to do work, is one of the exceptions to medical improvement applicable? (If not, the disability is continuing.); (6) If there has been medical improvement related to the claimant's ability to do work, or if one of the first group of exceptions is applicable, is the combination of impairments severe? (If not, the disability has ended.); (7) If so, is the claimant able to engage in past relevant work? (If so, the disability has ended.); (8) If not, is the claimant able to perform other substantial gainful activity?

20 C.F.R. § 404.1594(f)(1)-(8); *Griego*, 940 F.2d at 944, n.1.

[3] Under the regulations the plaintiff's age placed him in the category of "younger person."  20 C.F.R. § 404.1563(c).

5

was as a technician in the prep shop department of a car dealership. Plaintiff was earlier self-employed as a shop auto mechanic. AR pp. 91-94.[4] The events leading up to the plaintiff's application for benefits began with an accident which occurred during the plaintiff's employment at the car dealership. On July 2, 2004 the plaintiff was driving a car for his employer when he was struck by another car and taken to the hospital with neck and back pain. AR p. 329. Plaintiff began a course of treatment consisting of physical therapy, epidural steroid injections, and anti-inflammatory and pain medications. Plaintiff was released to return to his employment at the car dealership, first to light duty and then to full duty, but continued to experience neck pain and limitations that required ongoing treatment. Eventually the plaintiff's doctors recommended an anterior cervical decompression and fusion at C3-4 and C4-5, which was performed on April 17, 2006.[5] Plaintiff last worked in March 2005, and alleges this as the onset of his disability in the application for benefits he filed in April 2006. AR pp. 78-80.

Plaintiff's application for benefits was initially denied and the plaintiff requested a hearing before an administrative law judge (ALJ). A hearing was held and the ALJ issued a partially

---

[4] Plaintiff described his prep shop duties in detail at the administrative hearing. AR p. 33.

[5] *See, for example*, AR pp. 187-88, 198-201, 203-06, 209, 213-14, 216, 224, 237, 245, 251, 258-59, 269-71, 296-97, 318-322, 325.

favorable decision on July 2, 2008.  AR pp. 19-64.  The ALJ found that the plaintiff had a combination of severe impairments, consisting of neck pain status post two level fusion and low back pain, and that from March 2, 2005 through November 28, 2006 he was disabled.  In finding this closed period of disability, the ALJ determined that due to neck pain and the need to recover from surgery the plaintiff was unable to work on a regular and continuing basis during this time.  However, the ALJ found there was medical improvement related to the plaintiff's ability to work as of November 29, 2006, and that beginning on this date the plaintiff could perform a full range of light work.  With this residual functional capacity the plaintiff could not do the medium to heavy work he had done as a car technician and mechanic. Therefore, the ALJ proceeded to the final step to consider whether the plaintiff was able to perform other substantial gainful activity.  The ALJ concluded that beginning on November 29, 2006, based on a residual functional capacity for a full range of light work, and considering the plaintiff's age, education and work experience, a finding of not disabled was directed by Rule 202.21 of the Medical-Vocational Guidelines.[6]

The Appeals Council considered the plaintiff's request for review along with additional evidence, and ultimately denied the request for review and affirmed the ALJ's decision on February 25,

---

[6] 20 C.F.R. pt. 404, subpt. P, app. 2, Table No. 2.

2009.  AR pp. 1-13.  Plaintiff then filed this petition for judicial review challenging the final decision of the Commissioner that he has only a closed period of disability and is not under a continuing disability.

## **Analysis**

Plaintiff asserted that the award of a closed period of disability must be reversed because the ALJ failed to properly apply the medical improvement standard. Plaintiff also argued that the Commissioner failed to meet his burden of proving medical improvement related to an ability to work and a current ability to engage in substantial gainful activity.

Review of the record as a whole shows that the ALJ did not err in his analysis.  Contrary to the plaintiff's assertions, the record adequately demonstrates that the ALJ compared the medical evidence, tests and reports before and after the cessation date to determine whether the plaintiff experienced medical improvement related to his ability to work.  Furthermore, the findings resulting from the ALJ's analysis are supported by substantial evidence.

As noted by the ALJ, before November 29, 2006 the plaintiff was involved in a car accident while at work.  The accident occurred in July 2004.  Complaints of neck pain and limitations followed and ultimately objective tests revealed the plaintiff had cervical spondylosis, a herniated disc and stenosis.  Plaintiff

received conservative treatment, but was unsuccessful in his attempt to return to and sustain employment in the job he performed at the car dealership. This supports the ALJ finding the period of disability began when the plaintiff was no longer able to work in March 2005. AR pp. 34, 78.

The inability to return to work and continued pain and limitations despite conservative treatment finally led to the recommendation that the plaintiff undergo surgery. The cervical fusion was performed April 16, 2006. Clearly, as the ALJ recognized, the plaintiff could not work on a regular and continuous basis while recovering from neck surgery. AR pp. 25-26. Therefore, the ALJ found that plaintiff's disability continued until the medical records showed that he had recovered from this surgery, was at maximum medical improvement, and an assessment of his capacity to perform work-related activities demonstrated his ability to work.

The medical and other records provide more than substantial evidence to support the ALJ's finding that the plaintiff experienced medical improvement related to his ability to work as of the end of November 2006. The reports of the plaintiff's orthopaedic surgeon, Dr. Kevin P. McCarthy, noted the post-surgery decrease in the severity of the plaintiff's symptoms as compared to his neck condition before surgery. Dr. McCarthy's progress reports in the weeks and months after surgery stated that the plaintiff had

9

good motion in his upper extremities, and his pre-operative upper extremity symptoms were gone. In a report dated August 22, 2006, approximately four months after the operation, Dr. McCarthy stated the plaintiff said his pain and symptoms were markedly improved as compared to before the operation. Essentially, Dr. McCarthy consistently reported that with regard to the plaintiff's cervical spine, the plaintiff only had discomfort on an occasional basis, he was not having the pain that he experienced previously, and he had an excellent range of motion. Medical records dated 11 months to one year after surgery also included statements that the plaintiff's neck problems were relieved by the surgery. AR pp. AR pp. 191, 196, 261-65, 389-91, 465-69, 471. A post-surgery CT myelogram of the cervical spine on November 21, 2006 showed no evidence of any recurrent stenosis or neural compression in the neck. AR pp. 407, 512-14.

The doctor's records did indicate that the plaintiff had some complaints of post-surgery pain/weakness in his upper extremities below the area of the fusion, and lower back and leg pain/weakness. Plaintiff was sent for tests and a further evaluation of these symptoms. The test results and the doctor's review of the tests showed that the plaintiff had mild ulnar nerve compression-left elbow and mild bilateral carpel tunnel syndrome, and mild L5 radiculopathy on the left, with no spinal stenosis, nerve root impingement or disc herniation at any level. Dr. Charles Kaufman,

a neurologist, emphasized the findings of the tests were mild, and he as well as Dr. McCarthy noted that the symptoms reported by the plaintiff were not consistent with tests results and out of proportion based on the objective findings.  Dr. Joe Morgan also evaluated the plaintiff from the standpoint of his upper extremity complaints.  He stated that the test results were mild and he did not recommend any treatment.  Dr. Morgan also noted that the plaintiff had a full range of motion of all joints in both upper extremities, and satisfactory strength in both hands without any localized weakness or atrophy.  AR pp. 304, 398-408, 452-53, 456, 467-69, 472-74, 492, 497, 505-06, 520.  Review of this evidence as a whole provides substantial evidence to support the ALJ's finding that objective testing and examinations did not support the plaintiff's complaints of severe/constant lower back pain, and pain/numbness in the upper extremities.

This evidence, along with the evidence related to the plaintiff's improved cervical condition and the functional capacity reports done in November 2006 and August 2007,[7] is substantial evidence to support the conclusion that by November 2006 the plaintiff had medical improvement related to the ability to work. Likewise, this evidence and consideration of the Medical-Vocational Guidelines is sufficient to support the finding that the plaintiff could do other work existing in the national economy

---

[7] AR pp. 483-85, 507-12.

11

beginning on November 29, 2006.[8] As of this date, with a residual functional capacity for light work and given plaintiff's age, education and work experience, Rule 202.21 directed a finding of not disabled.[9]

Plaintiff cited several pages in the administrative record and selected comments from his doctors which he contends support his appeal of the ALJ's decision.[10] Review of this evidence does not demonstrate a lack of substantial evidence for the ALJ's findings. On judicial review the court cannot reweigh the evidence considered by the Commissioner. Nor is it required that all of the relevant evidence support the Commissioner's findings.[11] If the findings and decision are supported by substantial evidence considering the

---

[8] The ALJ properly considered all of the plaintiff's current impairments, not just the impairment that rendered him disabled during the closed period, in his evaluation of the plaintiff's ability to engage in substantial gainful activity.

[9] The ALJ determined, and it is clear from the record as well, that as of November 29, 2006 the plaintiff did not have the residual functional capacity to do his past relevant work as an auto mechanic and technician. 20 C.F.R. § 404.1594(f)(7). Therefore, the ALJ correctly proceeded to the eighth and final step of the analysis to determine whether the plaintiff was able to perform other substantial gainful activity. 20 C.F.R. § 404.1594(f)(8).

[10] Plaintiff's Memorandum in Support, pp. 5-6.

[11] All of the evidence in the record does not have to support the ALJ's findings. Even if substantial evidence supports the claimant's position it is not grounds for reversal. As long as the finding or decision is supported by substantial evidence in the record as a whole it must be affirmed. *See*, *Carroll v. Dept. Health, Ed. and Welfare*, 470 F.2d 252, 254 n. 4 (5th Cir. 1972); *Haley v. Massanari*, 258 F.3d 742, 746 (8th Cir. 2001).

record as a whole they must be upheld. A review of the record establishes that this quantum of evidence exists here. There is no basis for the plaintiff's argument that the final decision was either unsupported by substantial evidence or not in compliance with the proper legal standards. The decision of the Commissioner should be affirmed.

### **Recommendation**

It is the recommendation of the magistrate judge that, under sentence four of 42 U.S.C. § 405(g), the final decision of Michael J. Astrue, Commissioner of Social Security that the plaintiff experienced medical improvement related to his ability to work, and could engage in substantial gainful activity so he was no longer disabled as of November 29, 2006, be affirmed and this action be dismissed.

Baton Rouge, Louisiana, July 23, 2010.

*Stephen C. Riedlinger*
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE